# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON

NICOLE NELSON,

        Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration,

        Defendant.

CASE NO. 2:17-cv-0789 JRC

ORDER ON PLAINTIFF'S COMPLAINT

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S. Magistrate Judge and Consent Form, Dkt. 3; Consent to Proceed Before a United States Magistrate Judge, Dkt. 4). This matter has been fully briefed. *See* Dkt. 9, 10, 11.

After considering and reviewing the record, the Court concludes that the ALJ erred at the final step of the sequential disability determination when she found that plaintiff could perform other work existing in the national economy. When making this finding, the ALJ relied on a

finding from a vocational expert ("VE") that plaintiff's past relevant work ("PRW") as a laboratory technician required the skills of "analyzing statistical data to prepare reports" when substantial evidence fails to support such a finding. AR. 679. Plaintiff's testimony reveals that her PRW involved only gathering data, not analyzing data.

Therefore, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further consideration consistent with this order.

## BACKGROUND

Plaintiff, NICOLE NELSON, was born in 1953 and was 55 years old on the amended alleged date of disability onset of July 17, 2008. *See* AR. 309-11, 692. Plaintiff completed college with a degree in biology. AR. 697. Plaintiff has work history as a research technician in molecular biology. AR. 131.

According to the ALJ, through the date last insured, plaintiff had at least the severe impairments of "fibromyalgia, carpal tunnel syndrome (CTS), and asthma (20 CFR 404.1520(c))." AR. 672.

## PROCEDURAL HISTORY

Plaintiff's application for disability insurance benefits ("DIB") pursuant to 42 U.S.C. § 423 (Title II) of the Social Security Act was denied initially and following reconsideration. *See* AR. 169, 170. Over the past nine years plaintiff has had three hearings and three unfavorable decisions (*see* AR. 8-27, 28-124, 125-68, 172-92, 666-88, 689-733). Plaintiff's most recent hearing was held before Administrative Law Judge Kimberly Boyce ("the ALJ") on December 6, 2016. *See* AR. 689-733. On March 22, 2017, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act. *See* AR. 666-88.

In plaintiff's Opening Brief, plaintiff raises the following issues: (1) Whether the ALJ met her burden of showing that there were other jobs in the national economy that plaintiff could perform by relying on vocational expert (VE) testimony regarding transferable skills that conflicted with plaintiff's pre and post hearing testimony; and (2) Whether this case should be remanded for a finding of disability and award of benefits. *See* Dkt. 9, pp. 1-2.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## DISCUSSION

(1) **Did the ALJ meet her burden at step five of showing that there were other jobs in the national economy that plaintiff could perform by relying on vocational expert (VE) testimony regarding transferable skills that conflicted with plaintiff's pre and post hearing testimony?**

Plaintiff argues that the ALJ erred in finding her capable of performing a significant number of jobs existing in the national economy. Dkt. 9, pp. 4-14. "Once a claimant has established that he or she suffers from a severe impairment that prevents the claimant from doing any work he or she has done in the past, the claimant has made a prima facie showing of disability." *Tackett v. Apfel*, 180 F.3d 1094, 1100–01 (9th Cir. 1999). The burden then shifts to the Commissioner to show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and

work experience. 20 CFR § 404.1560(b)(3). The Commissioner can meet this burden in two ways: (1) by the testimony of a vocational expert ("VE"), or (2) by reference to the Medical–Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. *See Desrosiers v. Secretary of Health and Human Servs.*, 846 F.2d 573, 577–78 (9th Cir. 1988).

At the hearing on December 6, 2016, plaintiff testified that she spent the bulk of her career as a laboratory technician cloning genes at the direction of the scientists she worked with at Immunex. AR. 697-99. Plaintiff also has experience preparing DNA sequences by pouring gels of radioactively labeled probes, running the gels, and using a program to read the DNA sequence. AR. 697. During plaintiff's description of her cloning work, the ALJ interrupted plaintiff by stating "honestly I have no idea what you're saying. And, you know, it's way too far over my level of understanding." AR. 699.

At the hearing, VE Anne Kemerer Jones testified that plaintiff could not perform her past relevant work because of exposure to toxic or caustic chemicals. AR. 727. However, the VE testified that plaintiff's skills from her past work would transfer to the work performed as a research assistant II. AR. 727. When asked how plaintiff's prior work transferred to the work of research assistant II, the VE stated that she "heard from testimony" that plaintiff "was gathering data and collecting data . . . and preparing reports based on that data." AR. 729.

Plaintiff's counsel questioned the VE regarding how plaintiff's prior work translated to the job of a research assistant II. Upon prompting by plaintiff's counsel, plaintiff clarified that the scientist she worked with "read the papers and established

where we were going with the project … [and] he was the one that presented the data for lab meetings. I might present my results … [such as] a photograph of a gel and I would explain what I had done to achieve this ….ated" AR. 730. When asked if she was "gathering data from the experiments" she was conducting, plaintiff responded "right." AR. 730.

After the hearing but before the ALJ issued her decision, plaintiff's counsel submitted a letter and attached statement from plaintiff (*see* AR. 1052-57) arguing that the "VE's testimony regarding transferable skills does not accurately reflect Ms. Nelson's work history." AR. 1052. In her statement, plaintiff stated that she does not have any geometry or statistics skills required for a research assistant II job. AR. 1055. Plaintiff also stated that in her past job she "only once" wrote a section of a report herself, but that the methodology sections—which lab technicians were responsible for including in reports—were formulaic and the same for each report. AR. 1055.

In her decision, the ALJ relied upon the VE's testimony and determined:

> The vocational expert testified that the claimant's past relevant work as a laboratory technician was skilled with a specific vocational preparation (SVP) code of 7 and required the following skills: analyzing statistical data to prepare reports.

AR. 679. Based on this determination, the ALJ found that plaintiff "had acquired work skills from past relevant work that were transferable to other occupations with jobs existing in significant numbers in the national economy," including the job of research assistant II which has 343,000 jobs in the national economy. AR. 680. The ALJ further noted that "[t]he vocational expert testified that the claimant's skills learned at her past work and the skills necessary for research assistant II were related because they both

require gathering data and using it to educate and train others through reports that are prepared from the data." AR. 680. According to the ALJ, plaintiff "testified that she gathered data … from her experiments" and the VE:

> testified that this is very similar to the research assistant II job, which requires *analyzing verbal or statistical data* through reference materials such as data collected through experiments and data collected through documents, literature or statistical records. *Then, the task is to analyze and evaluate the data collected and present it in the form of a report or presentation before other people.* The skill and tool used to collect data (a computer) are the same between the two jobs.

AR. 680 (emphases added). The ALJ acknowledged that plaintiff submitted a brief challenging the VE's testimony, but she noted that the VE relied upon plaintiff's testimony and the DOT to form her opinion and the ALJ gave "more weight to the testimony at [t]he hearing and to the expertise of the vocational expert than to post-hearing explanations and arguments." AR. 680-81.

The Court's inquiry is limited to reviewing whether the ALJ's decision is supported by substantial evidence and free of legal error. *Bayliss*, 427 F.3d at 1214 n.1. Here, the ALJ relied upon Ms. Jones's VE testimony to conclude that plaintiff's past relevant work was generally transferable to the job of research assistant II. However, Ms. Jones's testimony, in the context of the whole record, does not rise to the level of substantial evidence necessary to support the ALJ's conclusion.

In determining whether an individual has any transferable skills, the focus is on the individual's past relevant work. "Transferability means applying work skills which a person has demonstrated in vocationally relevant past jobs to meet the requirements of other skilled or semi-skilled jobs." S.S.R. 82–4; *see* 20 C.F.R §§ 404 .1568(d)(1),

416.968(d)(1). When the ALJ makes a finding of fact that a claimant has transferable skills, "the acquired work skills must be identified, and specific occupations to which the acquired work skills are transferable must be cited in the State agency's determination or ALJ's decision." *Id.; see also Bray v. Commissioner of Social Security*, 554 F.3d 1219, 1226 (9th Cir. 2009) (requiring remand due to ALJ's failure to make any findings regarding the transferability of acquired work skills). "A finding of transferability is most probable among jobs that involve: (1) the same or lesser degree of skill; (2) a similarity of tools; and (3) a similarity of services or products." *Renner v. Heckler*, 786 F.2d 1421, 1423 (9th Cir. 1986) (citing 20 CFR § 404.1568(d)(2)). "Complete similarity of skills, however, is not necessary." *Renner*, 786 F.2d at 1423 (citing 20 CFR § 404.1568(d)(3)).

Here, the VE testified that plaintiff's past work is transferable to the job of research assistant II. The *Dictionary of Occupational Titles* identifies the work of a research assistant II:

> *Analyzes verbal or statistical data* to prepare reports and studies for use by professional workers in variety of areas, such as science, social science, law, medicine, or politics: *Searches sources*, such as reference works, literature, documents, newspapers, and statistical records, to obtain data on assigned subject. *Analyzes and evaluates applicability of collected data. Prepares statistical tabulations*, using calculator or computer. Writes reports or presents data in formats such as abstracts, bibliographies, graphs, or maps. May interview individuals to obtain data or draft correspondence to answer inquiries. May be designated Legislative Aide (government ser.) when conducting studies to assist lawmakers.

199.267-034 RESEARCH ASSISTANT II, DICOT 199.267-034 (emphases added). The VE stated that she relied upon plaintiff's testimony to reach the conclusion that plaintiff

"was gathering data and collecting data . . . and preparing reports based on that data." AR. 729. However, substantial evidence does not support the VE's reliance upon plaintiff's testimony to find that she prepared reports based on the data. Indeed, according to plaintiff's testimony, she did not prepare reports based upon the data she collected. Rather, plaintiff testified that she collected data and the scientists prepared the reports and presented the data. *See* AR. 697-99; 730-31; 1055. This is a very important distinction and represents an entirely different skill set.

As noted by defendant, the "VE characterized Plaintiff's former job as 'collecting data from her experiments," and then analyzing and evaluating the 'possibly collected data' and presenting it in some fashion." Dkt. 10, p. 5 (citing AR. 730-31). As summarized by the ALJ, the VE testified that plaintiff's past relevant work as a laboratory technician "required the following skills: analyzing statistical data to prepare reports." AR. 679. However, regardless of how one characterizes the VE's testimony, it is not supported by substantial evidence, and the ALJ's reliance on it is legal error. There is nothing in plaintiff's testimony regarding her past relevant work to support the finding that plaintiff's job required her to analyze data or prepare reports. Defendant cites plaintiff's technical testimony regarding signaling models, computer analyses searching for functional open reading frames, reading DNA sequences, looking for data, analyzing "original plates" to pick certain colonies, and isolating DNA to figure out if it was a new or known gene. *See* Dkt. 10, pp. 3-4 (citing AR. 131, 397-99). However, regardless of how technical plaintiff's work sounds, it nevertheless still entailed gathering data, not analyzing data – gathering highly complex DNA data of varying types, but gathering data

nonetheless. Neither the ALJ, the VE, nor defendant has cited any evidence that plaintiff's past relevant work involved analyzing data. Therefore, ALJ's reliance on the VE's testimony, which includes testimony that plaintiff's past relevant work required "analyzing statistical data to prepare reports," is erroneous and not based on substantial evidence. AR. 679.

Moreover, the VE did not address any of the other skills required to perform the work of research assistant II. For example, the VE did not opine regarding whether plaintiff's prior work skills were transferable to other aspects of the research assistant II job, such as (1) analyzing and evaluating the applicability of collected data; (2) searching sources, such as reference works, literature, documents, newspapers, and statistical records, to obtain data on assigned subjects; (3) preparing statistical tabulations, using a calculator or computer; and (4) writing reports or presenting data in formats such as abstracts, bibliographies, graphs, or maps. Although complete similarity of skills is not required when opining that a plaintiff has transferable skills to perform other jobs existing in the national economy, *Renner*, 786 F.2d at 1423, the Court concludes that the ALJ's decision additionally is not supported by the record given that she failed to discuss in her opinion or elicit additional testimony from the VE regarding the transferability of plaintiff's skills to the remainder of the job requirements of a research assistant II. It is not apparent from plaintiff's description of her job duties that she would have experience doing any of these noted tasks. The ALJ must "build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings." *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003).

Without an explanation or discussion as to how plaintiff's work skills are transferable to the bulk of the required work of a research assistant II, the ALJ did not meet her burden at Step Five to find that plaintiff can perform other jobs existing in the national economy.

Furthermore, the ALJ dismissed plaintiff's post-hearing explanation without discussion, other than to note that she gives "more weight to the testimony at [t]he hearing and to the expertise of the vocational expert than to post-hearing explanations and arguments." AR. 680-81. The Commissioner "may not reject 'significant probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (quoting *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (quoting *Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981))). The "ALJ's written decision must state reasons for disregarding [such] evidence." *Flores*, 49 F.3d at 571. Here, the ALJ offered no explanation for why she rejected the additional explanation from plaintiff regarding her past work, which is probative of whether plaintiff has transferable skills to perform the work of a research assistant II. As noted by plaintiff, she is the best source of information about her past work and the skills it involved. *See* SSR 82-41, 1982 WL 31389, at *4 (S.S.A. 1982) ("The claimant is in the best position to describe just what he or she did in PRW, how it was done, what exertion was involved, what skilled or semiskilled work ac[]tivities were involved, etc."). This, the ALJ should do following remand of this matter.

Plaintiff also asserts that she cannot perform the research assistant II job because that role at her prior employer was "three levels higher than the job she had" prior to the alleged onset of disability. Dkt. 9, pp. 8 (emphasis omitted). However, the Court is not

persuaded as different roles may have different titles and plaintiff has presented no evidence that the research position at her prior employer was the same as the position described by the DOT. Indeed, as conceded by plaintiff, the roles even have different titles. *See id.* At her prior employer, the more advanced role was of "research associate"; the VE testified that plaintiff could perform the role of research assistant. Thus, the fact that plaintiff had not advanced in her career to a different position with a similar title has no bearing on whether she can perform the job of research assistant as described by the DOT. Regardless, the Court has already determined that the ALJ failed to meet her burden at Step Five.

Defendant correctly notes that "[j]ob duties and job skills are not one and the same." Dkt. 10, p. 3. Defendant argues that plaintiff improperly cites to her specific duties, but the VE "reasonably identified the specific skills that Plaintiff gained in performing the job" to find her capable of performing the role of research assistant II. *Id.* (emphasis omitted). Defendant is correct that "[a] skill is knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation which is above the unskilled level (requires more than 30 days to learn)." *See* SSR 82-41, 1982 WL 31389, at *2 (S.S.A. 1982). While plaintiff may be focused on the duties of her prior work, rather than the skills she acquired, the VE nonetheless—and subsequently the ALJ in her decision—failed to discuss the additional skills necessary to perform the remainder of the work of research assistant II. Thus, the ALJ erred at Step Five.

The Court also concludes that the error at Step Five is not harmless. The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing *Stout v. Commissioner*, *Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting cases)). Recently the Ninth Circuit reaffirmed the explanation in *Stout* that "ALJ errors in social security are harmless if they are 'inconsequential to the ultimate nondisability determination' and that 'a reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'" *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (citing *Stout*, 454 F.3d at 1055-56). In *Marsh,* even though "the district court gave persuasive reasons to determine harmlessness," the Ninth Circuit reversed and remanded for further administrative proceedings, noting that "the decision on disability rests with the ALJ and the Commissioner of the Social Security Administration in the first instance, not with a district court." *Id.* (citing 20 C.F.R. § 404.1527(d)(1)-(3)). Here, because the ALJ failed to support her Step Five findings with substantial evidence, which is the final step bearing on disability, the error affected the ultimate disability determination and is not harmless.

    (2) **Whether or not this case should be remanded for a finding of disability and award of benefits**.

Plaintiff also argues that remand for a finding of disability and for an award of benefits is appropriate here. Dkt. 9, pp. 14-15. The Court may remand this case "either

for additional evidence and findings or to award benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Generally, when the SSA does not determine a claimant's application properly, "'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit has put forth a "test for determining when [improperly rejected] evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (quoting *Smolen*, 80 F.3d at 1292). An award of benefits is appropriate when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Harman*, 211 F.3d at 1178 (quoting *Smolen*, 80 F.3d at 1292).

It is unfortunate that after nine years and three unfavorable decisions, this matter must again be reconsidered by the ALJ. This administrative process should not be "heads you win, tails, we toss again." Nevertheless, it is also impossible for this Court to fill in blanks that remain unresolved. Here, outstanding issues must be resolved, that is, development of the record to determine whether plaintiff has the requisite transferable skills to conduct the job of research assistant II. Therefore, unfortunately, remand for further consideration is warranted in this matter to determine this particular issue.

//

//

//

## CONCLUSION

Based on the stated reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further consideration consistent with this order.

**JUDGMENT** should be for plaintiff and the case should be closed.

Dated this 20th day of December, 2017.

J. Richard Creatura
United States Magistrate Judge